```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
VINCENT A. BROCK,                              :
                  Plaintiff,                   :
                                               :
v.                                             :      OPINION AND ORDER
                                               :
DR. AVANZATO, DR. PARIKH, R.N.                 :      19 CV 5891 (VB)
HAREWOOD, DR. ZAMILUS, R.N. AWAKA,             :
R.N. STEVENS, and R.N. MILANES,                :
                  Defendants.                  :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Vincent A. Brock, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 against defendants Drs. Joseph Avanzato, Bharat Parikh, and Gaetan Zamilus, and Nurses Sherry-Anne Harewood, Patricia Stevens, Ifeoma Awaka, and Ann Milanes.[1] Plaintiff alleges defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #31).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's

---

[1] Dr. Avanzato was sued as "Dr. Avanzado," and Dr. Zamilus as "Dr. Zimmelus." (Doc. #2). In addition, by letter dated October 30, 2019, pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997), the New York State Attorney General ("AG") identified defendant "R.N. M" as Ann Milanes. (See Doc. #28).

favor, as summarized below. Because plaintiff is proceeding pro se, the Court also considers allegations made for the first time in plaintiff's opposition to the motion to dismiss and his declaration in support of his opposition. See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).[2]

During the complained-of events, plaintiff was incarcerated at Fishkill Correctional Facility ("Fishkill") in Beacon, New York, and at Wende Correctional Facility ("Wende") in Alden, New York.

I.   November 2017 Right Toe Injury

Plaintiff alleges that in early November 2017, while housed in the Regional Medical Unit at Fishkill, he stubbed his right toe while exiting a shower. Plaintiff claims that after "a few days," his toe began to peel and bleed, and he informed medical staff of same. (Doc. #2 ("Compl.") at ECF 5).[3] Plaintiff alleges that at this point, his injury was a "minor abrasion." (Doc. #41 ("Pl. Decl.") at ECF 1). Plaintiff alleges Nurse Awaka told plaintiff the doctor "wasn't in," that she would obtain antibiotic ointment and bandages for the injury, and that she would inform Dr. Parikh of the injury. (Compl. at ECF 5). Plaintiff alleges that one week later, a doctor still had not examined him.

Plaintiff further alleges that at the beginning of the following week, his toe had worsened, and he again requested to see a doctor. (Compl. at ECF 5). Plaintiff claims Nurse Harewood responded to his request and informed him that Dr. Parikh "wasn't in," but that she would place plaintiff's name on a list to see him. (Id.). According to plaintiff, later that day, he again

---

[2]   Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[3]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

2

requested medical attention, and Nurse Harewood told him Dr. Parikh had left for the day. Plaintiff claims another week went by without plaintiff being seen by a physician.

According to plaintiff, the following week his condition became "very serious," and he called for medical attention "every day." (Pl. Decl. at ECF 2). He alleges his toe was painful, "turning black and bleeding profusely," and that it was difficult for him to walk. (Compl. at ECF 6). Plaintiff claims Nurse Stevens examined him, told him his toe "look[ed] bad," and said she would place his name at the "top of the list" to see Dr. Parikh. (Id.). Plaintiff claims Nurse Stevens also informed plaintiff that Dr. Avanzato had ordered regular dressing changes and antibiotic ointment with bandages to treat the injury. Plaintiff says he went yet another week without a doctor seeing him.

Plaintiff alleges that during the last week of November 2017, he asked to see Dr. Avanzato. According to plaintiff, Nurse Milanes informed him that Dr. Avanzato was aware of plaintiff's condition and that she would make an appointment for a doctor to see plaintiff urgently. Nurse Milanes allegedly assured plaintiff a doctor would see him that same day, but neither Dr. Avanzato nor Dr. Parikh examined him that day.

Plaintiff claims that during dialysis appointments on unspecified dates in November 2017, non-party Nurses Diane and Lesile changed his dressings, because the registered nurses "mentioned in [his] complaint" neglected to change his bandages on "several occasions." (Pl. Decl. at ECF 2). Nurses Diane and Lesile also allegedly attempted to contact the Fishkill clinic to ask a doctor to examine plaintiff, but never received a response.

Plaintiff further alleges that at a scheduled dialysis appointment on or about November 28, 2017, Nurse Diane noticed plaintiff was dizzy and feverish. Plaintiff alleges Nurse Diane then sent plaintiff to Westchester County Medical Center's emergency room, where a vascular

surgeon examined plaintiff's foot, diagnosed gangrene in his right toe, and informed plaintiff that his foot needed to be amputated because, if it was not, plaintiff might die. Plaintiff claims that as a result of the spread of the infection from his stubbed toe, his right leg was amputated below the knee, comprising three surgeries over the course of six months. Plaintiff claims he was informed that early prevention could have avoided this outcome.

II.     November 2018 Left Toe Injury

Plaintiff claims he returned to Fishkill following the above-referenced hospital stay. Plaintiff claims that at the end of November 2018, he bruised his left big toe while exiting his cell. According to plaintiff, he informed Nurse Milanes of this incident, after which Dr. Zamilus examined plaintiff. At this point, plaintiff's left toenail was allegedly pushed back, with "very little blood" present. (Pl. Decl. at ECF 3). Plaintiff claims Dr. Zamilus ordered daily dressings and antibiotic ointment to treat the injury.

Plaintiff alleges that after a few weeks, his left big toe was turning black and more painful, at which point Dr. Zamilus prescribed daily Epsom salt soaks. Plaintiff alleges he asked for, but Dr. Zamilus did not prescribe, oral antibiotics, then or at any point during his treatment.

Plaintiff claims that after he started receiving daily Epsom salt soaks, he attended a dialysis appointment, where a vascular surgeon examined his left toe. Plaintiff alleges the surgeon told plaintiff to stop the Epsom salt soak treatment immediately because it was causing his toe to "deteriorate." (Pl. Decl. at ECF 4). According to plaintiff, the surgeon prescribed oral antibiotics for plaintiff, but plaintiff never received the medication because, prior to his next appointment with the surgeon, plaintiff was transferred to Wende.[4]

---

[4] Plaintiff alleges in his complaint he was transferred to Wende in December 2019, but his complaint was filed in June 2019. The Court assumes plaintiff meant to allege he was transferred to Wende in December 2018.

Plaintiff claims that a doctor at Wende examined his left toe and sent him to Erie County Medical Center, where the vascular surgery team explained that Epsom salt should not have been applied, and that a "series of different antibiotics should have been ordered to address [plaintiff's Peripheral Vascular Disease],"[5] the treatment of which requires oral antibiotics, not antibiotic ointments. (Compl. at ECF 7). Plaintiff claims as a result of the failure to provide oral antibiotics to address the infection, three toes on his left foot ultimately were amputated.

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[6] First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[5] Publicly-available research indicates that "Peripheral Vascular Disease," or "PVD," is a blood circulation disorder that can cause blood vessels to narrow, block, or spasm. If not properly treated, it can lead to loss of fingers, toes, or limbs. See What is peripheral vascular disease?, healthline, https://www.healthline.com/health/peripheral-vascular-disease (last visited September 18, 2020).

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however, … threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.     Eighth Amendment Deliberate Indifference to Medical Needs Claim

Defendants argue plaintiff fails plausibly to state a claim for deliberate indifference to his serious medical needs.[7]

The Court disagrees with respect to Drs. Avanzato and Zamilus, but agrees with regard to the other defendants.

A.     Legal Standard

To state a claim for constitutionally inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  This test has an objective prong and a mens rea

---

[7]     Plaintiff asserts deliberate indifference claims under both the Eighth and Fourteenth Amendments.  Because plaintiff was a convicted prisoner when the events giving rise to his claim occurred, his claim arises under the Eighth Amendment, not the Fourteenth Amendment.  See Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017).

prong: a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts. First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)). Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." Id. at 280. Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. But if the offending conduct is the "medical treatment given, the seriousness inquiry is narrower." Id. Then, courts look to "the alleged inadequate treatment, not the underlying condition alone," and consider "the effectiveness of the treatment the prisoner received, and the harm that resulted from the alleged shortfalls." Sanders v. City of New York, 2018 WL 3117508, at *8 (S.D.N.Y. June 25, 2018).

For the purpose of the objective component, a condition is sufficiently serious if it may cause "death, degeneration, or extreme pain," Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005), or if "the failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000). "Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition

significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Salahuddin v. Goord, 467 F.3d at 280.

The mens rea prong requires the plaintiff to plausibly allege "the official acted with deliberate indifference to inmate health." Salahuddin v. Goord, 467 F.3d at 280.  "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id.  Mere negligence does not give rise to an Eighth Amendment violation.  See Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).  Accordingly, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle v. Gamble, 429 U.S. at 106.  In other words, medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness.  See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

"[D]istinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018).  Courts look to the "degree of risk associated with the negligent treatment."  See id. (collecting cases).  Moreover, "mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation.  Chance v. Armstrong, 143 F.3d at 703.

B.   Application

1.   Nurse Awaka

With respect to his right toe injury, plaintiff's allegations against Nurse Awaka fail to satisfy the objective prong of the Eighth Amendment deliberate indifference analysis.  Plaintiff

8

alleges that a few days after he stubbed his toe, Nurse Awaka said she would get him antibiotic ointment and bandages; he does not allege Nurse Awaka failed provide to him this medical care. Even if Nurse Awaka had not provided him medical care, plaintiff himself alleges his injury at this point was a "minor abrasion." (Pl. Decl. at ECF 1). This allegation fails to suggest his injury was sufficiently serious at the time Nurse Awaka provided treatment. See Ford v. Phillips, 2007 WL 946703, at *12 (S.D.N.Y. Mar. 27, 2007) ("Abrasions, a minor bruise, slight bleeding and scratches are not injuries that may produce death, degeneration or extreme pain.").

Furthermore, although plaintiff argues for the first time in his opposition that Nurse Awaka failed to ensure a physician saw him after the injury to his left toe in November 2018, he nevertheless fails plausibly to allege any facts suggesting Nurse Awaka was aware of, or in any way involved in, treating his second injury.

Accordingly, plaintiff's deliberate indifference to serious medical needs claim against Nurse Awaka must be dismissed.

2. Nurses Harewood and Stevens

Plaintiff does not plausibly allege facts suggesting Nurse Harewood and Nurse Stevens failed to take "reasonable measures in response" to plaintiff's right toe injury such that they "actually deprived [plaintiff] of adequate medical care." Salahuddin v. Goord, 467 F.3d 263 at 279–80. Plaintiff alleges he informed Nurse Harewood of his worsening toe injury, and that she told plaintiff she would put his name on a list to be seen by a doctor. Similarly, plaintiff alleges that when he later told Nurse Stevens about his right toe injury, she said she would place plaintiff's name at the "top of the list" to see Dr. Parikh. (Compl. at ECF 6). Plaintiff does not allege any facts indicating that either Harewood or Stevens failed to take reasonable measures to

facilitate an appointment with a physician.  Indeed, plaintiff alleges Dr. Avanzato became aware of plaintiff's injury and ordered treatment for his right toe.

Moreover, even if plaintiff's allegations had suggested Nurses Harewood and Stevens failed to follow up on plaintiff's requests to see a physician, such allegations fail sufficiently to plead an actionable deliberate indifference claim.  See Oh v. Saprano, 2020 WL 4339476, at *6 (D. Conn. July 27, 2020) (holding nurse's failure to follow up on a plaintiff's request to be seen by a medical provider after placing the plaintiff's name on an "emergency list" constituted negligence, at most).

Accordingly, plaintiff's deliberate indifference to serious medical needs claim against Nurses Harewood and Stevens must also be dismissed.

### 3. Nurse Milanes

Plaintiff similarly does not plausibly allege facts suggesting Nurse Milanes failed to take "reasonable measures in response" to either of plaintiff's injuries such that she "actually deprived [plaintiff] of adequate medical care."  Salahuddin v. Goord, 467 F.3d 263 at 279–80.

Plaintiff alleges in conclusory fashion that Nurse Milanes did "nothing" with respect to treating either plaintiff's right toe in November 2017 or plaintiff's left toe injury in November 2018.  (Pl. Decl. at ECF 6).  However, with respect to the first injury, plaintiff also claims Nurse Milanes informed plaintiff that she would let Drs. Avanzato and Parikh know plaintiff needed to be seen urgently and assured plaintiff he would be seen that day.  To the extent plaintiff claims Nurse Milanes failed to follow up with Dr. Avanzato, plaintiff does not plead any facts to suggest such conduct constituted more than mere negligence.  See Oh v. Saprano, 2020 WL 4339476, at *6.

10

With respect to his left toe injury in November 2018, plaintiff alleges that soon after he informed Nurse Milanes of the injury, she had Dr. Zamilus examine same. Therefore, plaintiff fails adequately to plead Nurse Milanes acted with deliberate indifference to his serious medical needs.

Plaintiff further claims that as the "Ass[istant] Medical Director," Nurse Milanes should have known about and flagged plaintiff's underlying condition, PVD, to the physicians during the course of her involvement in both injuries. (Pl. Decl. at ECF 6). However, plaintiff makes no specific allegations that Nurse Milanes knew about or recklessly disregarded his PVD diagnosis in asking doctors to examine plaintiff.

Accordingly, plaintiff's deliberate indifference to serious medical needs claim against Nurses Milanes must also be dismissed.

### 4. Claims Regarding Refusal or Failure to Change Bandages

Plaintiff also asserts the nurses "mentioned in [his] complaint" neglected to change his bandages on "several occasions." (Pl. Decl. at ECF 2). He also alleges Nurse Harewood "refused" to change his dressings, but does not include any other facts to elaborate this allegation. (Id. at ECF 6). These allegations alone fail plausibly to suggest unconstitutional deliberate indifference. See Thomas v. Westchester County, 2013 WL 3357171, at *5 (S.D.N.Y. July 3, 2013) ("While not changing [p]laintiff's bandages daily may potentially amount to negligence, nothing alleged in [plaintiff's complaint] makes it plausible that [d]efendants knew of and consciously disregarded an excessive risk to [p]laintiff's health and safety—particularly as [p]laintiff received ongoing dressing changes and treatment.").

Accordingly, plaintiff's deliberate indifference claim must be dismissed inasmuch as it concerns the nurses' alleged failures to change plaintiff's dressings.

11

     5.     <u>Dr. Parikh</u>

Plaintiff does not plausibly allege facts to show that Dr. Parikh was aware of a "substantial risk that serious inmate harm [would] result." <u>Salahuddin v. Goord</u>, 467 F.3d at 280. Although plaintiff claims Nurses Awaka, Harewood, Stevens, and Milanes said they would ask Dr. Parikh to see plaintiff, the only allegation plaintiff makes specifically about Dr. Parikh's knowledge of plaintiff's right toe injury is that Dr. Parikh was "present during plaintiff's pain [and] anguish," and that on an unspecified date, Dr. Parikh "walked out" of the nurse's station after plaintiff allegedly asked to see him. (Pl. Decl. at ECF 7). These allegations are insufficient to state a plausible Eighth Amendment deliberate indifference claim, and this claim must be dismissed.

     6.     <u>Dr. Avanzato</u>

However, plaintiff plausibly alleges Dr. Avanzato was deliberately indifferent with respect to plaintiff's right toe injury. Plaintiff's allegations suggest Dr. Avanzato was made aware of this injury through one or more of the nurses. According to plaintiff, at some unspecified time, Dr. Avanzato prescribed a treatment of regular dressing changes and antibiotic ointment for plaintiff's injury without having examined plaintiff. Plaintiff's allegations also suggest that at some point after Dr. Avanzato became aware of his condition, plaintiff's right toe was "turning black and bleeding profusely," and the pain made it difficult for him to walk. (Compl. at ECF 6). According to plaintiff, Dr. Avanzato still did not examine him and did not otherwise alter the course of the prescribed treatment. Soon thereafter, plaintiff was allegedly diagnosed with gangrene and had his right leg amputated below the knee.

Moreover, plaintiff alleges Dr. Avanzato ignored plaintiff's PVD diagnosis—a blood circulation disorder that can cause blood vessels to narrow, block, or spasm, and which, if not

12

properly treated, can lead to loss of toes.  This allegation, in combination with plaintiff's allegations that Dr. Avanzato never examined plaintiff's worsening toe condition, suffice plausibly to suggest Dr. Avanzato "fail[ed] to act while actually aware of a substantial risk that serious inmate harm [would] result."  Salahuddin v. Goord, 467 F.3d at 280.

Accordingly, plaintiff's deliberate indifference to serious medical needs claim against Dr. Avanzato may proceed.

### 7. Dr. Zamilus

With respect to the amputation of plaintiff's three left toes, plaintiff plausibly alleges both prongs of the deliberate indifference claim against Dr. Zamilus.

Plaintiff alleges Dr. Zamilus examined plaintiff shortly after he injured his left toe, when plaintiff's left toenail was pushed back and there was "very little blood," (Pl. Decl. at ECF 3), at which point Dr. Zamilus prescribed daily dressings and antibiotic ointment.  Plaintiff further alleges that after a few weeks, his toe began to turn black and his pain increased, and Dr. Zamilus prescribed daily Epsom salt soaks.  Plaintiff claims Dr. Zamilus did not at any point prescribe him with oral antibiotics, despite plaintiff's request for same.  Plaintiff also alleges Dr. Zamilus failed to consider the importance of plaintiff's existing underlying medical condition, PVD, in prescribing treatment.

Although "is well-established that mere disagreement over the proper treatment does not create a constitutional claim," plaintiff's allegations suggest the treatment Dr. Zamilus provided was not "adequate."  Chance v. Armstrong, 143 F.3d at 703.  Indeed, plaintiff alleges a vascular surgeon was "shock[ed]" to learn of the treatment Dr. Zamilus was providing and instead prescribed plaintiff oral antibiotics, which Dr. Zamilus had declined to do.  (Pl. Decl. at ECF 4).  The surgeon also allegedly told him to stop the treatment Dr. Zamilus had prescribed because it

was causing his toe to deteriorate. Soon thereafter, the vascular surgery team at Erie County Medical Center allegedly told plaintiff he should not have used Epsom salt on his injury and that different antibiotics should have been used to treat his PVD. Accordingly, the Court concludes plaintiff has plausibly alleged Dr. Zamilus acted with deliberate indifference to his serious medical needs with respect to his left toe injury, given the seriousness of plaintiff's alleged condition and the course of treatment prescribed by Dr. Zamilus. See Zhang v. City of New York, 2018 WL 3187343, at *8 (collecting cases where mens rea was plausibly alleged given high degrees of risk associated with negligent treatment).

Accordingly, plaintiff's deliberate indifference to serious medical needs claim against Dr. Zamilus may proceed.

III.    State Law Claims

Defendants argue plaintiff's state law claims of medical malpractice and negligence must be dismissed.

The Court agrees.

New York Correction Law § 24, provides "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [the New York Department of Corrections and Community Supervision ("DOCCS")] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee." Section 24 of the New York Correction Law "confer[s] upon [DOCCS employees] an immunity from liability for activities that fall within the scope of the statute." Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996). Accordingly, "[c]ourts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions

arising within the scope of their employment." Davis v. McCready, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) ("[U]nder Section 24, any tort claim arising under New York law against Defendant must be dismissed for lack of subject matter jurisdiction.").

Here, plaintiff's allegations do not suggest defendants were acting outside the scope of their employment during any of the occurrences which give rise to his claims.

Accordingly, any state law claims against defendants are dismissed.

## CONCLUSION

The motion is GRANTED IN PART and DENIED IN PART.

The Clerk is instructed to terminate from the docket defendants Dr. Parikh, Nurse Awaka, Nurse Harewood, Nurse Stevens, and Nurse Milanes.

By October 6, 2020, defendants Dr. Joseph Avanzato and Dr. Gaetan Zamilus shall file an answer to the complaint.

By separate Order, the Court will schedule an initial conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion. (Doc. #31).

Dated: September 22, 2020
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge